22-1507 Donald James v. James Corrigan, argument not to exceed 15 minutes per side. Mr. Block, you may proceed to the appellant when ready. Good morning. Good morning, Your Honors. My name is Jeffrey Block, and I'm appointed pro bono counsel for the petitioner appellant Donald Lee James. With the court's permission, I'd like to reserve four minutes for rebuttal. Sounds good. There are two points I'd like to make this morning. The first is that ADPA's relitigation bar does not preclude Mr. James' petition, and the second is that the evidence introduced at trial, even when viewed in the light most favorable to the prosecution, is constitutionally insufficient under Jackson. Starting first with ADPA deference, the district court made a mistake of law when it substituted its findings of fact for the state court's findings of fact, and both the Supreme Court and this court have recognized that federal habeas courts are confined to the actual reasons provided by the state court. The Supreme Court and Wilson v. Sellers recognize... Did you say facts or is this the fire on mass point? That's right, Your Honor. So when the state court said that there was a mask, or excuse me, a firearm with James' DNA on it, when assessing whether ADPA's relitigation bar applies, this court is confined to looking at that fact. I have a question. I'm sorry, it's kind of tangentially related, but I've just been curious, and I'd like your take on it. If we were concerned about it, okay, assume this is a huge concern, we're going to have to rule in your favor. As you say in your brief, the proper remedy would be to let Mr. James out of jail, right? Yes, Your Honor. Could we just certify the question to the Michigan Supreme Court and say, what did your court of appeals mean? Can you ask them for us, did they mean to put mask instead of gun? I mean, in other words, habeas is about correcting grievous errors, and it seems to me the error here could be considered, I'm not saying it is, could be considered typographical in a sense. And so why not just ask them versus, I mean, kind of in a way make a mockery of habeas? And I'm not saying you are, your brief's fantastic, but I'm just asking. Well, Your Honor, I'm not aware of a regular practice of sending cases back to the Michigan state system, but I think here- You agree we could certify a question. I think it's possible, but I think here it's unnecessary to do so, because whether or not the state court meant mask or weapon is simply a question that goes to the re-litigation bar. It doesn't actually address whether or not Mr. James can be released from prison. So certainly this court is free to consider the ski mask as evidence when it's assessing Mr. James' Jackson claim. I think that's why it's unnecessary to send it below. But just in terms of does the re-litigation bar apply in this instance- But if the standard made a difference, why wouldn't we? I think here, Your Honor, the evidence is clear that there's no evidence that James is connected to a murder weapon. This court, again, is well-equipped to assess the Jackson claim here and can assess whether or not the presence of the ski mask, which we believe has no probative value in this case for James' guilt, and I'm happy to discuss that. But this court is more than capable of assessing that evidence in context of Mr. James' Jackson claim. But what if it's not a typo, it's a mistake, but, you know, we have mistakes all the time. I mean, this is not unusual in our job to see mistakes in opinions at some point along the way, and then sometimes you decide to make a mistake make a difference. And it's not obvious to me this mistake made a difference. Certainly, Your Honor, I understand. What I imagine animates that concern is that every mistake of fact doesn't mean that it satisfies 2254d2. And I think the text of that statute makes it clear that it's not any mistake of fact, but it's a mistake of fact where the state court decision is based upon that decision. And so the Eighth Circuit case that the district court cites in its opinion, Collier, I think, is instructive there. There, Collier was a Brady claim where two witnesses at trial had witnessed the petitioner shoot a weapon at the victim's car. And the state court undisputedly made two mistakes of fact in assessing the Brady claim. I mean, what if we just set the mistake aside? This is a different way of asking the Chief's question. Your argument, and maybe this is getting to your second point, I'm sorry to do this to you, but is that the evidence is insufficient when viewing it in a light most favorable to the government. That seems hard for me to buy because circumstantial evidence is used all the time. And our argument is not that circumstantial evidence is per se inadmissible or not prohibitive of James' guilt. Our argument is that in this particular case, the evidence does not show that he was ever at the crime scene. It does not show that he ever committed. I mean, circumstantially it does. There were three people in the car the night before. I mean, I think it's – and they were planning to rob it. Two people showed up at the robbery, one of whom was one of the three people in the car. That's undisputed. The ski mask was found after with his DNA. That's undisputed. They bought ski masks and wore ski masks there. And the phone, the witness said Donnie or Donna, and the police said Donnie. And, I mean, all that is circumstantial evidence that he was – without even the statements, which we can get to, but that he was there. Certainly, and this Court is free to consider those. But if I may go through those in turn, I think first as far as did James – was James involved in the planning of this robbery? The answer is no. Hickerson was the one who suggested they rob the Contreras' home. Hickerson purchased – But he was in the car. And you say, you know, Harold says he said a lot, then he said a little. But whatever he said, he's still in the car at the time. Harold wasn't at the robbery, and two people were. Certainly, Your Honor. But mere presence when other individuals may plan a crime is insufficient. And I think Parker – But you can't look at – your brief's brilliant, your reply brief. I love how you break it down. But the jury doesn't look at it piecemeal. The jury looks at it collectively. Certainly. But I think just to – I agree, Your Honor. Just to focus on whether or not he planned it. Are you agreeing that the reply brief's really good? Certainly. I just want to make sure we got that. I think in this case, it's much like Parker v. Renico, where the petitioner was present in the car when other individuals conspired to murder. But the state court in that case recognized that mere presence in the car when other individuals conspired to commit murder doesn't mean that you also entered in that conspiracy. And where James was silent as far as planning the robbery, I don't think that a rational juror would infer the predicate there, which is that he was involved in it. No, but you don't look at – again, you don't look at – and I'm sorry to beat this horse. You don't look at it alone. You look at it in context with all the other facts together, say he was there in the car when it was planned, two people showed up wearing ski masks, one of which is found by the scene, the other is on Hickerson, and that has his DNA. Certainly, Your Honor, but I think our best argument here is that the evidence introduced in this case is significantly less probative than the evidence introduced in Newman, and that there's nothing connecting James to the crime scene, including the ski mask, which we don't believe is at all connected to the charge. I mean, Newman footnote four says had they found that closer in time to the crime, which they did here, that would have made a difference. I think it was the gun. I can't remember. I think it was the gun in Newman. If I can focus on the ski mask briefly, because I think that's an important piece of evidence as far as tying James to the crime scene. We explained in our opening brief that based on the testimony of David Contreras, he said that two seconds after the gunfire stopped, he saw tires peel out and the second unidentified gunman lead the scene. We explained that it didn't make any sense for the second gunman to flee the scene, only to return to the very alley where Hickerson, Harold, and James were the day before the crime with the ski masks, and the state doesn't dispute that. Instead, what the state says is that it is theoretically possible that the second unidentified gunman ran 200 yards while continuously firing a weapon and then managed to dispose of the ski mask, hop in their car, and then drive another 200 yards all in under two seconds. That's not a credible theory, and the state hasn't put forward any possible theory of how the ski mask is connected with the charged conduct. Can we focus also on what happens after the crime has been committed? Certainly, Your Honor. There's this visit that Mr. James has with Thomas and Holland. Apparently, there's some indication, there's inconsistency in sort of what the testimony, but the gist of it is, you know, James says we effed up, you know, Hickerson got shot, maybe the gun was thrown in the lake, I mean, things of that nature. I mean, when you add that with all the planning, it seems that maybe that's enough for a rational jury to conclude that taking all the evidence together that Mr. James was at the scene and participated in the robbery. Your Honor, I would resist again the suggestion that James was involved in the robbery, I mean, in planning the robbery. I don't think there's any evidence of that. But as far as the post-crime conduct, it's undisputed at this stage that James mentioned that we fucked up and that Hickerson was shot. But there's, as the state says on page 32 of its brief, it concedes that that testimony alone is insufficient to prove that James committed the charge. That's your whole theory, to take every single piece and say that alone isn't enough, and there's only ten that alones. Your Honor, I think that our argument, if we're distilling it down in summation, is that all of the evidence, even when viewed in the light most favorable to the prosecution, viewed collectively, simply shows reasonable suspicion. I want to go to something you said at the very outset. I just want to make it as a point of law. You said when there's a mistake, okay, fine, some mistakes are harmless. But then you said, but if the court's decision that your words were based on, then you can't say harmless. And that's going to be a cognizable claim. And I don't know how to do that. I mean, every state court decision is going to be based on all the evidence they put up in front. So the only errors that are relevant under your theory is like describing the wrong day of something and the day doesn't even have to do with the crime. So that can't be the law, right? I mean... It's not, Your Honor. And respectfully, I think that Collier is very instructive here, which again is the case, the East Circuit case cited by the District Court, where there were two undisputed mistakes of fact. One was that the state court credited one witness as testifying at trial when it was in fact another witness. And they also said that there were other witnesses who saw the petitioner fire a weapon at a car when in fact there was only one other witness. But what the Eighth Circuit said in that case was, yes, there were two undisputed mistakes of fact. But looking at the record as a whole, there's no credible claim that the state court's assessment of the Brady claim was based on those mistakes. They didn't matter. And so that's what we... Why would the gun be any different than the mask? You say the mask is irrelevant, but the fact that they relied on the DNA on the gun is critical. But if the gun's found in the alley and it's the gun instead of the mask, it would still be irrelevant in your mind. I see my time has expired. May I answer that? Yeah. So I think that here, again, based on the Supreme Court's decision in Wilson v. Sellers, this court's decision in Coleman v. Bradshaw, when we're looking at the relitigation bar of AEDPA and not the Jackson claim, we're focused solely on the facts as relied upon by the state court. And so when we're assessing, again, just the relitigation bar, what we're focused on is, was there a mistake of fact? The answer is undisputedly yes. And here it's undisputed that the state court relied on the presence of an alleged murder weapon, both to rehabilitate the inconsistent testimony of Anthony Herold and to show identity at the crime scene. And so without those mistakes... I'm sorry, and this is my memory, if I may ask it, and then I'll stop. I thought he said he threw it in the lake. So that was on page 488 of the record. Herold makes that statement. But then further, because Herold's trial testimony was inconsistent from his sworn testimony at the preliminary statement, both the state and defense counsel and trial counsel both tried to assess, what did James actually tell you the morning of the crime? And on page ID 498, in response to the state's questioning, Herold says only that James said that we fucked up and Hickerson got shot. And then again, trial counsel tries to clarify what exactly was said. And on page ID 499, Herold repeats that same claim, that James said only that Hickerson was shot and we fucked up. Thanks. You can get your rebuttal. Good morning, Your Honors, and may it please the Court. Jared Schultz, Assistant Attorney General, on behalf of the respondent. This Court should affirm the District Court's decision denying habeas relief for two reasons. First, the sufficiency standard is a very deferential standard alone, and viewing all of the evidence here in the light most favorable to the prosecution, it is clear that a rational juror could conclude beyond a reasonable doubt that Mr. James was the second intruder. Second, the credibility and weight arguments, challenges to that evidence, were made to the jury, considered and rejected by the jury, and are not appropriate for an appellate court to consider when evaluating a sufficiency claim. So first, this Court is well aware that Jackson v. Virginia governs this claim. If you look at Jackson, there is just a ton of language in that opinion about just how deferential an appellate court must review. What do you do with Newman? Your Honor, Newman, I think that's the problem with comparing cases for sufficiency claims. It's a completely different case. The evidence that was found linking the defendant and Newman just linked him to that evidence, to the gun, I can't remember what else was found in the bag. Nothing linked him to the crime. Here, it's completely different. The ski mask was found near the crime hours later. There's two intruders in the house. Mr. Harreld testifies that there's three people in the car planning the robbery, planning to rob that house. Doesn't Mr. Block point out that it's kind of highly illogical that the ski mask got there on the day of the crime? I don't think that's true. The record is a bit unclear as to what happened to that second intruder. The surviving victims testified only that, I think it was Brian that testified that he hopped the fence while he was still shooting, and then two seconds later he saw the car flee the scene. There's nothing about where that intruder went after he hopped the fence. We all know two seconds, witnesses aren't always clear when they're under a lot of stress on time. Two seconds can mean two seconds, two seconds can mean it was a few moments later. I don't think the record is clear as to where exactly the intruder went, and it's not clear as to which direction the car drove when it's fleeing either. So I think the mask absolutely still is significant that it was found just 200 yards from the scene shortly after the crime. What's your theory of what the state court did with the whole mask thing? Your Honor, I think it's a mistake. Did anyone point it out? He was pro se at the state court of appeals, but the government would have been involved. Did anyone file a motion or something with the state court of appeals and say, oops, I think you're referring to the mask? I'm sorry, are you referring to the court of appeals or to the state court? State court of appeals. So the state Supreme Court denies discretionary review. I know he mentions this point in his petition, pro se. What I'm asking is after the state court of appeals decision, do your agency or him file something and say, are you sure you mean this? Or if you do mean it, it doesn't make sense? In the court of appeals, I don't believe so, Your Honor. And this was not our agency that prosecuted him. But no, in the court of appeals, no. In the Supreme Court, he filed a petition saying that this was a mistake. There was no weapon ever found. The prosecution, I don't believe, filed a response to that. And then the state Supreme Court just ---- In your theory that it's a mistake, mask is mentioned elsewhere in the opinion? Yes, Your Honor. Before the actual analysis, the state court outlines the arguments that Mr. James is making, the credibility challenges, and says one of the challenges is the significance of the DNA found in the mask that was located in the alley near the scene. In outlining those challenges, they didn't say anything about the weapon and link the DNA to the mask. So when the next paragraph, when it discusses the DNA found on the weapon, I think that's pretty clear that that's a mistake that it was referring to the DNA found on the mask because it doesn't make sense as a part of the record. It doesn't make sense when you refer to earlier in its opinion. I think you call it a mistake of words, something to that effect. It's really a mistake of fact, right? I mean, and then I guess going to the other question, I mean, what do we do about it? I mean, we have to accept the opinion as written. I mean, one could argue that a weapon is more probative of crime than, you know, a ski mask. I mean, would it ---- Is there a Scrivener's Error of Habeas Review? Your Honor, that's what I would argue, that this was a Scrivener's Error. This court ---- And there's a case that says that? Well, this court, in a recent opinion, it's an unpublished case. But in McLilley v. Nagy, and the site is 2023 Westlaw 21145, says that the writ of habeas corpus is to guard against extreme malfunctions in the criminal justice system, not as a tool to correct Scrivener's Errors. And that's what we have here is a Scrivener's Error. And I'll also point this court to a Tenth Circuit case, Grant v. Royal, 886 F3rd 874. The state court there had talked about something that did not occur in the record. And the Tenth Circuit said this was just a mistake and a Scrivener's Error, and that does not mean that it was an unreasonable determination of the facts. So, yes, there's an argument that it wasn't a Scrivener's Error. I think if you look at the opinion as a whole, it was, and that, therefore, AEDPA is not overcome at that point. However, I don't think that's necessary in this case to even decide whether AEDPA applies, given Jackson and the highly deferential standard of review, given the facts in this case. There was not only physical evidence, the ski mask, and you can't look at that just independently as Mr. James is doing. You have to view all the evidence collectively, as your honors have pointed out so far, and not just the ski mask, but the fact that there was Harold's testimony about the planning, about they were going to get ski masks, they did get ski masks, and they were going to have guns. You know, one thing about the Scrivener's Error point, you know, you can't do that with the legislature. I don't think that really works. It's a new legislature and all that. But maybe Judge Lepar's right. You should certify and actually, because you can confirm, was this a Scrivener's Error? Well, and I'm not. Of course, so maybe the judges aren't around anymore anyway. So maybe that's not, maybe even that doesn't work. Yeah, I think at least one of them isn't around anymore. However, I don't know that that would work. I'm not entirely sure on the standards for when the Michigan Supreme Court will take a certified question. However, I have never seen it where they, whether it's a certified question or whether it's just a direct appeal, where they remand it for the Court of Appeals to correct a fact in the record. Well, presumably they could even look at it and say, yeah, it was a Scrivener's Error. Correct, they could. I believe the standards are a little higher than that to take a certified question, not just to say, well, we believe it's a Scrivener's Error or not. However, I think this court, if it wanted to, it could. I don't think it's necessary in this case. And then I'll just quickly go to my second point, which was credibility and weight challenges are not appropriate for this court to consider. And that's essentially opposing counsel's entire argument is the DNA mask doesn't mean anything. Well, that's viewing the evidence in the light most favorable to Mr. James. Viewing it in the light most favorable to the prosecution, certainly a rational juror could find that the mask was dropped there by the second intruder and that his DNA on the part of the mask where it would have come in contact with the wearer's skin means that he wore that mask. Whether you can see it a different way, this court can't address that. Credibility challenges as well. Whether Mr. Harold had inconsistent testimony at the preliminary examination doesn't matter. The jury was free to believe all part or none of his testimony at trial. This court has to accept that they believed what he said, that Mr. James came to Mr. Harold after the crime and inculpated himself. Same with Ms. Thomas. Whether she gave inconsistent statements to the police doesn't matter. The jury heard that. The jury was free to reject it, reject her testimony. But they found him guilty. This court has to accept that the jury found her credible. At this point, again, I would just ask whether it's under EDPA deference or under the Jackson standard, I would ask that this court affirm Mr. James has not shown that he has overcome those standards, and I'm happy to answer any questions that this court has. Fine. Thank you. Appreciate it. Mr. Brock, you've got four minutes. Thank you. There are just a few points I'd like to make on rebuttal. The first is with the ski mask. The state has all but confirmed that it doesn't have any credible theory for how the ski mask is related to the charge conduct. Certainly, this court has to be the evidence in the light most favorable to the prosecution. But whereas here the state hasn't proffered any theory for how it's even possible that the second unidentified gunman ended up back in the alleyway, that evidence is not probative, particularly where Anthony Herold testified that the day prior to the charge conduct, Herold, Hickerson, and James were in the exact alley where the ski mask was found. And so there's just no reason why this court or a rational jury would credit that argument. The second point I'd like to make is on the state's suggestion that we're making credibility determinations. That's not true. And as this court has recognized in cases like Eskridge and USB Banks, when there's inconsistencies in trial testimony that go to the heart of an identification, the inconsistencies may be so significant that a rational juror could not credit them. And that's exactly what we have here. We're not suggesting that Ms. Thomas is- You agree all of this was put in front of the jury? Yes, Your Honor. But the fact- We're not arguing, for example, the fact that Rachel Thomas provided inconsistent testimony between her preliminary statement and at trial. What we're saying is that if you take all of Rachel Thomas' trial testimony as true, it's wholly unclear what James told her because she mentions three times in questions from the prosecution that James said only that Hickerson was shot and he doesn't know if he's dead or not. And so it's the internal inconsistencies in the trial testimony that we're troubled with, not any sort of credibility determinations. Third, I'd like to address the scrivener's error argument. Again, our position is that this court's case law and Supreme Court case law force the court to focus only on the decisions as written. And in cases where a court makes a scrivener's error that has nothing to do with the state court's determinations, then 2254 D.2 gives you a release valve because if the state court decision wasn't based upon that mistake effect, then you don't meet D.2's requirement. But whereas here it's clear that the state court based its decision on a gun that did not exist, James has met his requirement under D.2 to meet the re-litigation bar. And so that's how this court should deal with scrivener's errors. And finally, on the issue of remand, one concern I have is that if this court were to remand and to ask the state Supreme Court whether or not the state appellate court had intended ski mask or weapon, then what would follow up is that James would simply have to file yet another habeas petition under D.1 saying that this was an unreasonable application of Jackson. And we also raised that argument below. So I think that that's why a remand is unnecessary here, and this court can determine that the re-litigation bar does not apply here and that all of the evidence viewed in the light most favorable to the prosecution is constitutionally insufficient. And I think that Newman's our best case, and I think that the state hasn't yet shown why the evidence in this case is more probative than in Newman. By way of background, again, in Newman, the victim was- One of the keys in Newman was he didn't finger this guy in particular, whereas here they clearly planned to rob Contreras' house. I don't believe that James ever planned to rob the home. The group did, and that's much different than Newman, isn't it? Plus the mask was found in close proximity. Again, as far as the mask, there's no connection to the charge conduct. And again, the state hasn't offered- Those are differences, right? They are, but what the state says is that there are three differences between Newman and this case, and that has to deal with whether or not there's any connection between James and the crime scene. The state says that he was involved in planning it, that the victims testified that there were two individuals, and that there was this ski mask there. But we think we've rebutted those three buckets of evidence, and that in light of the significant evidence that was in Newman, the fact that the guns were connected to the petitioner, the fact that the petitioner had motive, the fact that the petitioner had a false alibi from his girlfriend, all of that is far more probative of the petitioner's guilt in that case, where this court granted the writ, than here. Unless this panel has any other questions. Thank you. No, thank you, Mr. Black. Thank you, Mr. Schultz. We appreciate your excellent briefs and argument. And Mr. Black, we're really grateful for your work here on behalf of Mr. James. He's really fortunate to have you as his lawyer. So thank you. Case will be submitted.